IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE PREMIER GROUP, INC., <br><br>        Plaintiff, <br><br>   v. <br><br> DARREN BOYD BOLINGBROKE, HEIDI McNULTY, MICHAEL SHANE COLLARD, JOSEPH R. SIMMONS, JAMES J. HUBBARD, KIMSITH BOUN, MARIA ALVARADO and DHS GROUP, LLC, <br><br>        Defendants. | MEMORANDUM DECISION <br><br> Case No. 2:15-cv-00530-TC-DBP <br><br> District Judge Tena Campbell <br><br> Magistrate Judge Dustin B. Pead |

## INTRODUCTION

This matter was referred to the Court under 28 U.S.C. § 636(b)(1)(A). (Dkt. 64.) This case involves a dispute between The Premier Group, Inc. ("Plaintiff"), and its former employees, Defendants Bolingbroke, McNulty, Collard, Simmmons, Hubbard, Boun, Alvarado, and the former employees' new business entity, DHS Group, LLC ("Defendants"). Plaintiff alleges that the individual Defendants misappropriated Plaintiff's proprietary information and began unlawfully competing with Plaintiff. (*See* Dkt. 1.) Presently before the Court is Defendants' Expedited Motion for Discovery. (Dkt. 68.)

## ANALYSIS

Defendants requests that the Court order Plaintiff to "clarify whether the alleged non-compete agreements it produced on August 10, 2015[,] are all alleged non-compete agreements for its current and former employees and that it provide the date(s) these agreements were allegedly signed." (Dkt. 68.) This request appears to be an attempt to enforce the District Court's

oral ruling made during a hearing on August 5, 2015, though Defendants' brief is unclear as to why they believe they are entitled to the information they seek. Defendants then ask the Court to order Plaintiff to produce a number of documents that Defendants requested via email.

Plaintiff responds that Defendants have not shown good cause to obtain a response to their expedited discovery request, which comes prior to any Rule 26(f) conference. (Dkt. 74.) Plaintiff also objects to the request for clarification regarding the non-compete agreements because it asserts that Defendants have exclusive possession of certain non-compete agreements from 2012. Finally, Plaintiff points out that the requests contained in Defendants' email were not addressed during the August 5 hearing.

### I. Plaintiff must turn over all non-compete agreements in its possession, custody, or control.

Defendants are entitled to the non-compete agreements they seek. At the August 5 hearing, Defendants indicated that they were seeking copies of any non-compete agreements signed by "every employee at the level of Ms. McNulty and Mr. Bolingbroke . . . ." (Dkt. 66 at 17.) Plaintiff's counsel represented to the District Court that "we would be happy to identify the directors and any other employees that have entered into non-compete agreements." (Dkt. 66 at 18–19.) After discussing the estimated number of such agreements, Judge Campbell ordered Plaintiff to "turn those over as well." (*Id.* at 19.) Thus, Defendants are clearly entitled to all non-compete agreements between Plaintiff and its employees.

Plaintiff has indicated via email to Defendants that it has turned over "non-compete agreements for other branch Directors in its possession." (Dkt. 68, Ex. D.) The Court's concern is the qualifier "branch Directors." Plaintiff shall turn over all non-compete agreements between it and "the directors and any other employees that have entered into noncompete agreements."

oral ruling made during a hearing on August 5, 2015, though Defendants' brief is unclear as to why they believe they are entitled to the information they seek. Defendants then ask the Court to order Plaintiff to produce a number of documents that Defendants requested via email.

Plaintiff responds that Defendants have not shown good cause to obtain a response to their expedited discovery request, which comes prior to any Rule 26(f) conference. (Dkt. 74.) Plaintiff also objects to the request for clarification regarding the non-compete agreements because it asserts that Defendants have exclusive possession of certain non-compete agreements from 2012. Finally, Plaintiff points out that the requests contained in Defendants' email were not addressed during the August 5 hearing.

### I. Plaintiff must turn over all non-compete agreements in its possession, custody, or control.

Defendants are entitled to the non-compete agreements they seek. At the August 5 hearing, Defendants indicated that they were seeking copies of any non-compete agreements signed by "every employee at the level of Ms. McNulty and Mr. Bolingbroke . . . ." (Dkt. 66 at 17.) Plaintiff's counsel represented to the District Court that "we would be happy to identify the directors and any other employees that have entered into non-compete agreements." (Dkt. 66 at 18–19.) After discussing the estimated number of such agreements, Judge Campbell ordered Plaintiff to "turn those over as well." (*Id.* at 19.) Thus, Defendants are clearly entitled to all non-compete agreements between Plaintiff and its employees.

Plaintiff has indicated via email to Defendants that it has turned over "non-compete agreements for other branch Directors in its possession." (Dkt. 68, Ex. D.) The Court's concern is the qualifier "branch Directors." Plaintiff shall turn over all non-compete agreements between it and "the directors and any other employees that have entered into noncompete agreements."

(Dkt. 66 at 18–19.) If Plaintiff has already turned over all agreements it possesses, Plaintiff may simply certify that this has been accomplished.

Further, the Court wishes to clarify that its order requires Plaintiff to turn over any non-compete agreements with former employees as well, and Plaintiff should include in its certification the status of any agreements with former employees. It is not clear from the transcript that any particular timeframe was considered for providing non-compete agreements for "employees." The Court does not want production in this case modified by the happenstance of a particular employee's status with Plaintiff. Defendants are entitled to see the other purported non-compete agreements, even if the employees have since separated from employment with Plaintiff. Plaintiff has not indicated that the volume of such agreements presents any hurdle to their production.

Finally, Plaintiff suggests that Defendants may possess additional non-compete agreements executed in 2012. While it should go without saying, Plaintiff is not expected to produce documents exclusively in the possession of Defendants, nor will the Court require Plaintiff to certify the status of such documents. Even so, Plaintiff must produce all non-compete agreements in its possession, custody, or control, or certify that it has done so by close of business on August 19, 2015.

**II.   Defendants have not demonstrated that they are entitled to other materials prior to the preliminary injunction hearing.**

Defendants have not demonstrated any basis for the Court to order any additional production of materials from Plaintiff prior to the preliminary injunction hearing. Defendants must demonstrate good cause to obtain discovery in advance of a Rule 26 conference. *See Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). "In

applying the 'good cause' standard under Rule 26(d), the court should consider the scope of the requested discovery. *Id.* at 420.

Defendants have not demonstrated good cause here. Instead, Defendants demand the documents and state that those documents were referenced in Plaintiff's Verified Complaint. The Court is left to speculate what justification exists for ordering production in advance of the preliminary injunction hearing. While just about any relevant information can be argued to be relevant to a likelihood of success on the merits, this proves too little in this instance. Although matters may be relevant to the ultimate merits of a case, the universe at a preliminary injunction hearing is necessarily smaller given the expedited nature of the proceedings. Ultimately, it is the parties' role to justify any requested expedited discovery and Defendants have not done so here. In fact, Defendants initially opposed expedited discovery in this case. (*See* Dkt. 61.)

Defendants must demonstrate good cause for their requested discovery. In particular, they must demonstrate that the scope of the requests is appropriate for the issues to be addressed in the preliminary injunction hearing.

Notwithstanding the above, the Court will order production of items two and three because they are plainly relevant to the issues to be addressed during the preliminary injunction hearing. It is clear that the purported text messages and the non-compete agreements will be central during the hearing because those items have been discussed in prior motions related to expedited discovery. (*See* Dkt. 60–61.) Accordingly, Plaintiff must produce to Defendants "[a]ny text messages or screen shots of text messages allegedly sent by Ms. McNulty telling customers that Premier was going out of business or that Defendants were going to open a new company." (Dkt. 68, Ex. C) Plaintiff must also make available "[o]riginal copies of the alleged non-compete

agreements with Ms. McNulty and Mr. Bolingbroke." (*Id.*) These items must be turned over no later than close of business on August 19, 2015.

Finally, the Court recognizes that Defendants' briefing may have suffered as a result of the compressed timeline in this case. If Defendants feel that any particular documents are critical to their position at the preliminary injunction hearing, they may file a brief explaining that relevance no later than 5:00 P.M. on Wednesday, August 19, 2015. If Defendants do not file a brief, or do not convince the Court that the materials are critical to the preliminary injunction issues, this Order will stand.

### III.     Defendants are not entitled to fees.

The Court denies Defendants' request for fees. Defendant was only partially successful on the motion and the Court finds that fees are not justified here. *See* Fed. R. Civ. P. 37(a)(5)(C).

### ORDER

Based on the foregoing, Defendants' Expedited Motion for Discovery is **GRANTED IN PART AND DENIED IN PART**. (Dkt. 68.) Plaintiff must produce all non-compete agreements in its possession, custody, or control, or certify that it has done so by close of business on August 19, 2015. By the same deadline, Plaintiff must produce to Defendants any text messages or screen shots of text messages allegedly sent by Ms. McNulty telling customers that Premier was going out of business or that Defendants were going to open a new company, and Plaintiff must also make available original copies of the alleged non-compete agreements with Ms. McNulty and Mr. Bolingbroke.

Finally, Defendants may file a brief explaining any special relevance of the materials they requested from Plaintiff by 5:00 P.M. on Wednesday, August 19, 2015. If Defendants do not file a brief, or do not convince the Court that the materials are critical to the preliminary injunction matter, this Order will stand.

IT IS SO ORDERED.

Dated this 18th day of August, 2015.

By the Court:

_____
Dustin B. Pead
United States Magistrate Judge